## ELLIOT v. LOMBARD.

### No. 6816.

Circuit Court of Appeals, Fifth Circuit.

Aug. 18, 1934.

Wm. A. Van Siclen and Merritt Barton, both of Ancon, C. Z., for appellant.

Purnell M. Milner, of New Orleans, La., L. S. Carrington, of Ancon, C. Z., and Carlos Icaza A., of Panama City, Panama, for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

This case arises from a collision between the motorboat Real, owned by appellant, and a barge in tow of the motorboat Lucky Girl both owned by appellee, which resulted in the sinking and total loss of the barge and some damage to the Real. The case was prosecuted by libel and cross-libel. The District Court reached the conclusion that the Real was solely at fault and rendered judgment against her, fixing the damages at $6,321.29, with interest and costs in addition. On a former hearing we dismissed the appeal for want of proper parties, as the surety on a release bond for the vessel had not been joined in the appeal. 66 F.(2d) 662. The Supreme Court granted certiorari and reversed this judgment. 292 U. S. 139, 54 S. Ct. 637, 78 L. Ed. 1175.

The law is well settled and need not be discussed. As to the facts, the record is voluminous, with much irrelevant evidence, and shows the conflict of testimony usual in collision cases. However, there is no dispute as to the facts we consider material, in the view we take of the case, which are these: The Lucky Girl is a motorboat about 45 feet long. The Real is a motorboat about 64 feet long. At the time of the collision the Lucky Girl was towing a steel barge 85 feet long, loaded with sand, which was made fast to her starboard side, extending about 50 feet ahead of the tug's bow. Both vessels carried the regulation lights and had sufficient crews. They were commanded by men licensed as operators by the Panama Canal authorities. A dredged channel runs in a general Northwesterly direction from Panama Bay to the Pacific entrance of the Panama Canal. It is 500 feet wide, 32 feet in depth, and is marked by numbered buoys, spaced about 1,100 yards apart, some of which are lighted. The buoys are placed opposite each other, the odd-numbered buoys on the west side of the channel with the even numbers on the east. Buoys Nos. 1 and 2 mark the entrance in Panama Bay. There was sufficient depth of water outside of the channel on the west side for the Lucky Girl to navigate with the tow as far north as buoy No. 9, but a little further north the water was too shallow. About 2:45 o'clock on the morning of July 31, 1930, the Lucky Girl with her tow entered the channel from the west at about buoy No. 5. About 2:30 o'clock the Real left Balboa, bound for sea. The night was dark but clear and calm. The Lucky Girl pulled out of the channel to the west at about buoy No. 7 in order to pass the tug Chagres and tow coming from the other direction. Almost immediately her operator observed the lights of the Real approaching from the other direction. The operator of the Real observed the lights of the Lucky Girl when his vessel was about opposite buoy No. 11. Buoys Nos. 7 and 11 are something over a mile and a quarter apart. There was a perfectly straight reach between them with no obstructions. The Real was making about 5 to 5½ miles per hour. The District Court found that the Lucky Girl was making about 1½ knots per hour. Other evidence in the record tends to show that she was going considerably faster, somewhere between 4 and 5 miles per hour. The whistle of the Lucky Girl was out of order. Neither vessel blew any signals at any time and each boat kept her course and speed until they had approached to within 50 to 75 feet of each other. Then, and not until then, the engines of both were put full speed astern, in an effort to check headway; but it was too late and the collision occurred, near buoy No. 9. The Real struck the barge amidships on her starboard side. She was pushed by the Real

544

about 150 feet outside the western edge of the channel, where she sank.

The District Court found that the collision occurred just off buoy No. 9, outside the channel. We accept that finding as correct as to the approximate point of collision but it is impossible to say whether it was just inside or just outside the western edge of the channel. But that is immaterial. It is almost impossible to reconcile the testimony of the operators of the vessel as to what lights they first observed or what their manoeuvers were just prior to the collision, except as stated above. That, too, is immaterial. The controlling facts are shown with certainty, that is, that neither vessel gave any whistle signals at any time and neither made any effort to stop and back her engines until too late to avoid the collision.

The rules and regulations governing navigation of the Panama Canal and adjacent waters provide: That when two vessels sight each other, in a canal channel less than 800 feet wide, when they are about a mile apart they shall reduce speed and proceed cautiously until they have passed in the clear, Rule 55; that vessels as large as the Lucky Girl and the Real are obliged to carry a whistle or other mechanical sound producing device, Rule 80; that vessels such as the Lucky Girl· and the Real, navigating the waters of the Canal Zone, when approaching each other from the opposite direction are required to indicate their intention in passing by whistle signals, one short blast to signify the intention to direct a course to its own starboard or to assent to a similar signal from the other boat, two blasts to signify the same intention or assent to direct the course to port; that if there is a failure to understand the signal of the other vessel, the danger signal of four or more short blasts must be blown, the engines of both vessels must be stopped, and the vessels backed until headway has been checked, and neither vessel shall again start ahead until the proper passing signals have been given, answered, and understood, Rule 82. Rule 82 conforms to the international rules, and all other rules of navigation with which we are familiar, and it has been the accepted custom of navigators since practically the beginning of steam navigation.

There is no doubt that both vessels were running close to the western edge of the channel and approaching each other practically head on. They saw each other's lights when· they were about a mile apart. Had passing signals been given and understood, when the vessels first sighted each other, it is reason-

ably certain the collision would have been averted. When signals were not given it was the duty of each vessel to immediately stop and back her engines. Conceding that each was running at a speed of about 5 miles an hour, if they had done so promptly, there was ample time and distance in which to have checked their headway and the collision would probably have been avoided. The conclusion we reach is that the vessels were equally at fault. The proximate cause of the collision was the negligence of their operators in failing to observe the rules and in failing to use good judgment and seamanship.

It is contended that it is not shown that Lombard was the owner of the barge. The District Court found that he was the owner, on a careful analysis of the evidence, and we agree with him. It also appears that the District Court found that the Real had been damaged to the extent of $650. We see no occasion to disturb this finding nor that fixing the value of the barge.

The judgment appealed from is reversed, and the case is remanded, with instructions to enter a decree dividing the damages, costs in this court, other than those appertaining to the application for certiorari, and costs in the District Court to be divided equally.

Reversed and remanded.